UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JULIE CLARIDGE and HELEN MARSH,

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-2-15

                              Plaintiffs,                         15-cv-1261 (PKC)

         -against-                                          MEMORANDUM
                                                            AND ORDER

NORTH AMERICAN POWER & GAS, LLC,

                              Defendant.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

       Plaintiffs Julie Claridge and Helen Marsh bring this putative class action alleging that defendant North American Power & Gas, LLC ("North American") engaged in deceptive billing practices that unlawfully overcharged consumers for electricity services. According to plaintiffs, North American attracted subscriptions by offering a low fixed rate for three months, and then charged a variable monthly rate that exceeded prevailing market prices. Plaintiffs allege that North American engaged in deceptive business practices barred by New York General Business Law sections 349 and 349-d. They also bring claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

       North American moves to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. Because the Complaint plausibly alleges that North American's description of its variable monthly rates is confusing and ambiguous, and that a reasonable consumer could be misled as to the methods for calculating those rates, the motion to dismiss is denied.

SUBJECT MATTER JURISDICTION UNDER CAFA.

       The Court's subject matter jurisdiction is premised on the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). "CAFA confers original federal jurisdiction over class

actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity, i.e., where at least one plaintiff and one defendant are citizens of different states." Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 141 (2d Cir. 2013) (citing 28 U.S.C. § 1332(d)(2)).

Both plaintiffs are citizens of New York. (Compl't ¶¶ 5-6.) Defendant North American is identified as an LLC organized under the laws of Delaware with its principal place of business in Connecticut. (Compl't ¶ 7.) Plaintiffs do not allege the citizenship of North American's members. Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). This standard for determining the citizenship of an unincorporated association under CAFA differs from that applied to a complaint that invokes diversity of citizenship, in which the citizenship of an unincorporated association is determined according to the citizenship of each member. See, e.g., Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2001).

Although the Second Circuit has not yet given guidance as to an LLC's citizenship for purposes of CAFA jurisdiction, two United States Courts of Appeals have held that an LLC's citizenship under CAFA is determined by state of organization and principal place of business under section 1332(d)(10). Siloam Springs Hotel, LLC v. Century Surety Co., 781 F.3d 1233, 1237 & n.1 (5th Cir. 2015), concluded that an LLC is an unincorporated association under CAFA, and that actions brought by LLCs "are treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by its state of organization and principal place of business, not by the citizenship of its members." Similarly, the Fourth Circuit concluded that "a limited liability company is an 'unincorporated association' as used in § 1332(d)(10), whose citizenship is that of the State under whose laws it is organized and the State

where it has its principal place of business," and not "under traditional rules by looking to the citizenship of its sole member . . . ." Ferrell v. Express Check Advance of South Carolina LLC, 591 F.3d 698, 700, 701 (4th Cir. 2010); see also Ventimigla v. Tishman Speyer Archstone-Smith Westbury, L.P., 588 F. Supp. 2d 329, 336 (E.D.N.Y. 2008) (applying section 1332(d)(10) to a limited partnership).

This Court concludes that as an LLC, North American is an unincorporated association, and its citizenship in a CAFA action is determined pursuant to section 1332(d)(10). North American is therefore a citizen of Delaware and Connecticut. Because the plaintiffs are both citizens of New York and the Complaint purports to seek more than $5 million in damages on behalf of a class, the Complaint adequately alleges minimal diversity and this Court's subject matter jurisdiction under CAFA.

BACKGROUND.

Plaintiffs Claridge and Marsh both became customers of North American in January 2014. (Compl't ¶¶ 5-6.) Defendant North American provides electricity to the plaintiffs, and is alleged to have "thousands of customers in New York," with "tens of millions of dollars in combined revenues." (Compl't ¶ 7.)

According to the Complaint, North American operates in a competitive electric utility industry within the State of New York. (Compl't ¶¶ 11-12.) Energy Service Companies ("ESCOs") like North American supply power to customers, but the delivery of electricity is managed by local utility firms. (Compl't ¶ 12.) ESCOs are not required to file with public authorities either their electricity rates or their methods for setting rates. (Compl't ¶ 13.)

Claridge alleges that in or around January 2014, North American offered her a rate "slightly lower than" what she was then paying to another ESCO.[1]  (Compl't ¶¶ 17, 21.) She "signed up with" North American to supply power to her own house and the house of her daughter.  (Compl't ¶ 17.)  Her initial fixed rate, from January 2014 through March 2014, was $0.0549 per kilowatt hour.  (Compl't ¶ 21.)

As to Marsh, North American offered her and initially charged her $0.0699 per kilowatt hour over a period of four months.  (Compl't ¶¶ 27-28.)

After the expiration of the introductory rate period, Claridge and Marsh allege that they were charged at variable rates that were "substantially higher" than those of "other ESCOs or local utilities."  (Compl't ¶ 14.)  Claridge states that North American charged her a variable rate of $0.1599 per kilowatt hour, "almost three times the rate" initially offered. (Compl't ¶ 21.)  Separately, Marsh alleges that from January 2014 to January 2015, her rates increased from the initial $0.0699 to $0.1739 per kilowatt hour.  (Compl't ¶ 31.)

Plaintiffs allege that the variable monthly rates charged by North American were contrary to the "New York Electricity Sales Agreement Customer Disclosure Statement and Terms and Conditions" provided by North American (the "Agreement"), which expressly stated that after expiration of the three-month plan, service would renew using a month-to-month, variable rate.  (Compl't ¶ 19 & Ex. 1.)  The Complaint annexes a copy of the Agreement.[2]

---

[1] Throughout the Complaint, the plaintiffs describe North American's solicitation of customers as a "bait-and-switch" scheme, whereby they induced new subscriptions through "a teaser rate" before charging monthly variable rates that exceeded market prices.  (See Compl't ¶¶ 2, 15, 17-18, 20, 27-29.)  The Complaint does not, however, assert that North American's use of a "teaser rate" was itself unlawful.  Plaintiffs' causes of actions are directed only toward North American's calculation of monthly variable rates, and they bring no claims directed to the initial fixed rates offered to consumers.

[2] The Agreement annexed at Exhibit 1 is alleged to be the Agreement provided to Claridge.  (Compl't ¶ 19.)  The Complaint identifies Exhibit 2 as a version of the Agreement that was published on North American's website. (Compl't ¶ 28.)  Exhibits 1 and 2 contain identical language concerning variable monthly fees, under the heading "Open Price."  Exhibit 2 does not set forth a specific fixed rate for new customers, though it states that "[u]pon

(Compl't Ex. 1.)  According to the Complaint (as is more fully discussed below) North American's statements concerning its variable rates were misleading.  (Compl't ¶ 20.)

The Complaint brings five causes of action under New York law.  Count One and Count Two allege that North American engaged in deceptive business practices and deceptively marketed energy services in violation of New York General Business Law sections 349 and 349-d.  (Compl't ¶¶ 46-60.)  Count Three alleges that North American breached the Agreement by not setting electricity rates according to the factors prescribed in the Agreement.  (Compl't ¶¶ 61-68.)  Count Four alleges that North American breached the Agreement's implied covenant of good faith and fair dealing by charging "exorbitant electricity rates" that were not based on "variable market prices."  (Compl't ¶¶ 69-72.)  Count Five alleges unjust enrichment, in the alternative to plaintiffs' breach of contract claim, and alleges that it would be inequitable for North American to retain the benefits incurred from its allegedly excessive billing rates. (Compl't ¶¶ 73-76.)

RULE 12(b)(6) STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Legal conclusions are not entitled to the presumption of truth, and a court assessing the sufficiency of a complaint disregards them.  Id.  Instead, the Court must examine only the well pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  "Dismissal is appropriate

---

completion of any initial or renewal term," the Agreement "will automatically renew on a month to month variable market rate basis on the same terms as contained herein."  (Compl't Ex. 2.)  Exhibit 2 omits language stating that savings are not guaranteed.

when 'it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court may "consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . .'" Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)).

DISCUSSION.

I.      The Complaint Plausibly Alleges Violations of General Business Law.

    A.   Sections 349 and 349-d.

New York General Business Law section 349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

"In order to ensure an honest marketplace, the General Business Law prohibits all deceptive practices . . . ." Karlin v. IVF America, Inc., 93 N.Y.2d 282, 287 (1999).  To state a claim for relief under section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." City of N.Y. v. Smokes-Spirits.Com, Inc., 12 N.Y.3d 616, 621 (2009).  Section 349 "contemplates actionable conduct that does not necessarily rise to the level of fraud." Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 343 (1999).  A plaintiff need not prove scienter, and "section 349 encompasses a significantly wider range of deceptive business practices that were never previously condemned by decisional law." Gaidon v. Guardian Life Ins. Co. of Am., 96 N.Y.2d 201, 210 (2001); accord Karlin, 93

N.Y.2d at 290 (section 349 applies "to virtually all economic activity," and its application "has been correspondingly broad.").

In moving to dismiss, North American argues that the Complaint fails to plausibly allege that the Agreement was deceptive or would materially mislead a reasonable consumer. Section 349 uses "an objective definition of deceptive acts and practices . . . ." <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.</u>, 85 N.Y.2d 20, 26 (1995). "A 'deceptive act or practice' is defined as 'a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances.'" <u>Feld v. Apple Bank for Sav.</u>, 116 A.D.3d 549, 551 (1st Dep't 2014) (quoting <u>Gaidon</u>, 94 N.Y.2d 330, 344 (1999)). Whether a defendant's conduct is deceptive "may be determined as a matter of law or fact (as individual cases require) . . . ." <u>Oswego</u>, 85 N.Y.2d at 26.

Section 349-d, which was enacted in 2011, contains language similar to section 349(a), and "target[s] abuses in the energy services market." <u>Simmons v. Ambit Energy Holdings, LLC</u>, 2014 WL 5026252, at *2 (S.D.N.Y. Sept. 30, 2014) (Furman, J.). It states: "No person who sells or offers for sale any energy services for, or on behalf of, an ESCO shall engage in any deceptive acts or practices in the marketing of energy services." N.Y. Gen. Bus. L. § 349-d(3). The parties agree that section 349-d(3) has the same elements as section 349(a). <u>See generally Chen v. Hiko Energy, LLC</u>, 2014 WL 7389011, at *6 (S.D.N.Y. 2014) (Bricetti, J.) (applying the same elements to sections 349(a) and 349-d(3)).

### B. The Misleading Language of the Agreement.

At the top of page 1 of the Agreement, under the clear and prominent heading "Price," the introductory price is expressly disclosed. On the reverse side, the Agreement's language about the variable monthly rates charged after the introductory period is confusing even

to a careful, sophisticated reader.  Then entire text of the provision, labeled "Open Price," is as follows:

> Approximately each month the customer bill will be calculated by multiplying (i) the price of electricity by (ii) the amount of electricity used in the billing cycle plus (iii) applicable taxes, fees, and charges levied by the utility of distribution and other services.  NORTH AMERICAN POWER's price for all electricity sold under this Agreement shall be fixed for the term indicated on the Disclosure Statement above, and is guaranteed not to change for the term listed on the Disclosure Statement or any renewal notice.  <u>Variable market based rates will be calculated on the method stated above</u> to include any market prices for commodity, transportation, balancing fees, storage charges, NORTH AMERICAN POWER fees, profit, line losses plus applicable taxes, and any other charges or fees imposed by the utility or other entity having such authority to impose such charges.

(Compl't Ex. 1 (emphasis added).)

First, the "Open Price" provision states that variable market-based rates "will be calculated on the method <u>stated above</u>," but the Agreement contains no such "method stated above."  The immediately preceding text explains that customers' monthly bills are calculated by multiplying electricity price by the amount of electricity used, then adding additional fees and charges. (Compl't Ex. 1.)  This explanation for determining a customer's monthly billing total does not explain "the method" for calculating variable monthly rates.  No preceding sections of the Agreement could be understood as setting forth "the method" for calculating "[v]ariable market based rates."  A reasonable consumer seeking to identify the basis for "[v]ariable market based rates" would search without avail for any "method stated above."  This incomplete and confusing explanation for calculating variable market-based rates could lead a reasonable consumer to believe that he or she would receive a "variable market rate," <u>i.e.</u>, one that was competitive with those charged by other ESCOs.

- 8 -

At one point, the Agreement refers to the "market prices for commodity, transportation, balancing fees [and] storage charges," i.e., the market prices of what North American pays.  But the earlier references to "[v]ariable market based rates" could be read as referring to prevailing market rates charged by competing ESCOs.  The Complaint alleges that "the market price of electricity," i.e., the price charged by competing ESCOs, is much lower than North American's prices.  (See, e.g., Compl't ¶¶ 20-26, 29, 32-35, 39 ("consumers are charged rates that are substantially higher" than those charged by competitors).)  A reasonable consumer acting reasonably would not know whether "variable market based rates" refers to rates charged by competing ESCOs or the market prices that North American paid to others.  A reasonable consumer acting reasonably could be deceived into believing that the rates he or she would be charged under the Agreement would approximate the market price, i.e., what other ESCOs charged their customers.

Because the Agreement is plausibly alleged to be confusing and ambiguous, this is not, as North American argues, an instance in which a defendant has "simply publish[ed] truthful information and allow[ed] consumers to make their own assumptions about the nature of the information." Gomez-Jimenez v. New York Law Sch., 103 A.D.3d 13, 17 (1st Dep't 2012); Sands v. Ticketmaster-New York, Inc., 207 A.D.2d 687, 687 (1st Dep't 1994) (claim of "excessive" fees dismissed because "there is no dispute that such fees are always disclosed . . . .").

North American also cites to the Agreement's provision that "[n]o savings are guaranteed as the utility price may vary during the term of this Agreement." (Compl't Ex. 1.) However, New York courts have concluded that disclaimers alone are insufficient to dismiss a section 349 claim at the pleading stage. See, e.g., Koch v. Acker, Merrall & Condit Co., 18

N.Y.3d 940, 941 (2012); Goshen v. Mutual Life Ins. Co. of N.Y., 98 N.Y.2d 314, 326-27 (2002) (disclaimers "do not establish a defense as a matter of law.").

The parties have extensively discussed decisions granting or denying dismissal motions addressed to consumer challenges to electrical rates. These cases are of limited persuasive value, however, given that the terms of the agreement or representation differ in each case, and that several of the actions are brought under non-New York consumer-protection laws. See, e.g., Edwards v. North American Power & Gas, LLC, 2015 WL 4644597, at *6-11 (D. Conn. Aug. 4, 2015) (plaintiffs plausibly alleged that North American violated Connecticut consumer-fraud statute based on marketing materials and contractual language not raised in this case); Urbino v. Ambit Energy Holdings, LLC, 2015 WL 4510201, at *3-5 (D.N.J. July 24, 2015) (dismissing claim under New Jersey consumer fraud statute when agreement stated that defendant could charge variable monthly rates based on multiple factors); Zahn v. N. Am. Power & Gas, LLC, 2015 WL 2455125, at *3-4 (N.D. Ill. May 22, 2015) (because power company did not falsely state that its variable rates were determined solely by market price, complaint did not plausibly allege violation of Illinois consumer fraud statute); Chen, 2014 WL 7389011, at *2, *4 (plaintiffs plausibly alleged violations of section 349 and 349-d when rates allegedly did not reflect promised savings and allegedly were not based on factors set forth in consumers' contracts); Wise v. Energy Plus Holdings LLC, 11 Civ. 7345 (WHP), Docket # 9, 23 (transcript of hearing in which Judge Pauley concluded that the Amended Complaint plausibly alleged that defendants misleadingly promised to provide "a market-rate product" that "reflect[ed] the current state of each market . . . .").

Because the Complaint plausibly alleges that a reasonable consumer could be materially misled by the Agreement's language concerning variable monthly rates, the motion to dismiss plaintiffs' claims under sections 349 and 349-d is denied.

II.     The Plaintiffs Plausibly Allege Breach of Contract and Breach of the
         Implied Covenant of Good Faith and Fair Dealing.

For largely the same reasons, the Complaint plausibly alleges claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

The elements of a breach of contract claim "include the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." Harris v. Seward Park Hous. Corp., 79 A.D.3d 425, 426 (1st Dep't 2010).  Plaintiffs' breach of contract claim asserts that North American breached its promise to set its monthly variable rates according to market rates.  (Compl't ¶¶ 63-67.)  As previously discussed, the Complaint plausibly alleges that the Agreement is confusing and ambiguous.  Whether North American breached this provision cannot be resolved at the pleading stage.  See, e.g., 1000 Northern of New York Co. v. Great Neck Med. Assocs., 7 A.D.3d 592, 593 (2d Dep't 2004) (when contractual language is ambiguous, court cannot resolve breach of contract claim as a matter of law).

The Complaint also plausibly alleges a breach of the covenant of good faith and fair dealing.  In New York, all contracts contain an implied covenant of good faith and fair dealing, under which "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002).  "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995).

- 11 -

According to the Complaint, North American violated the covenant by exercising its discretion in bad faith and in a manner inconsistent with customers' reasonable expectations. (Compl't ¶¶ 71-72.) Given the ambiguous language of the Agreement, the plaintiffs plausibly allege that North American could have exercised its discretion in a manner contrary to customers' expectations.

III.    The Unjust Enrichment Claim Is Voluntarily Dismissed.

Plaintiffs' claim of unjust enrichment is pleaded in the alternative to their claims for breach of contract and breach of covenant of good faith and fair dealing. In their opposition memo, the plaintiffs state that because North American does not dispute the existence of a valid and enforceable contract, they "waive" this claim, while reserving the option to revive such a claim in the event that the contract's validity is disputed. (Opp. Mem. at 16.) Their unjust enrichment claim is therefore dismissed without prejudice.

CONCLUSION

The defendant's motion to dismiss is DENIED. (Docket # 17.) Plaintiffs' unjust enrichment claim is dismissed without prejudice. The Clerk is directed to terminate the motion.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       September 2, 2015

- 12 -