# FBFG | Finkelstein, Blankinship, Frei-Pearson & Garber, LLP

Andrew G. Finkelstein, P.C. (NY & NJ) *
D. Greg Blankinship (NY & MA)
Jeremiah Frei-Pearson (NY)
Todd S. Garber (NY & CT)
―――――――――
Andrew White (NY)
Antonino Roman (NY)
Difie Osborne (NY & NJ)
John Sardesai-Grant (NY)
**Of Counsel**
George M. Levy (NY)
Duncan W. Clark (NY)
Robert J. Camera (NY & NJ)
Joseph P. Rones (NY)
Ronald Rosenkranz (NY) *
Steven Lim (NY)

George A. Kohl, II (NY & MA)
Eleanor L. Polimeni (NY)
Andrew L. Spitz (NY)
Thomas C. Yatto (NY)
Elyssa M. Fried-DeRosa (NY)
James W. Shuttleworth, III (NY)
David E. Gross (NY & NJ) *
Mary Ellen Wright, R.N. (NY) *
Kenneth B. Fromson (NY, NJ & PA) *
Nancy Y. Morgan (NY, NJ & PA)
Lawrence D. Lissauer (NY)
Michael T. McGarry (NY)
Victoria Lieb Lightcap (NY & MA) *
Ann R. Johnson (NY & CT)
Marshall P. Richer (NY)
Thomas J. Pronti (NY)

Kara L. Campbell (NY & CT)
Silvia Fermanian (NY)
Marie M. DuSault (NY)
Melody A. Gregory (NY & CT)
Elizabeth A. Wolff (NY & MA)
Robert E. Borrero (NY)
Christine Khalili-Borna Clemens (NY & CA)
Brian D. Acard (NY)
Nicholas Maiorano (NY & NJ)
Vincent J. Pastore (NY)
Andrew J. Genna, LLM (NY & PA)
Cynthia M. Maurer (NY & NJ)
Michael Feldman (NY & NJ) *
Raye D. Futerfas (NJ)
Linda Armatti-Epstein (NY)
Kenneth Cohen (NJ) *

David Akerib (NY)
Edward M. Steves (NY)
Frances M. Bova, R.N. (NY & NJ)
Mark B. Hudoba (NY)
Gustavo W. Alzugaray (NY)
Sharon A. Scanlan (NY & CT)
Marc S. Becker (NY)
Antonio S. Grillo (NY & NJ)
Aparna Anantharaman (NY)
Vincent J. Rossillo (NY)
Pamela Thomas (NY & CT)
Donald A. Crouch (NY & CT)
Karen O'Brien (NY)
Jennifer Safier (NY & NJ)
Thomas P. Welch (NY)
David Stauber (NY)

Annie Ma (NY & NJ)
Howard S. Lipman (NY)
Noreen Tuller, R.N. (NY)
Cristina L. Dulay ( NY & NJ )
Justin M. Cinnamon (NY & CT)
Robin N. D'Amore (NY)
Nicole Murphy (NY)
Rodrigo Arcuri (NY)
Marigold T. Bridgeman (NY)
Melanie D. Sanders (NY)
Kevin D. Burgess (NY)
Warren C. George (NY)
Frank R. Massaro (NY)
Kenneth G. Bartlett (CT & NJ)

* **The Neurolaw Trial Group**

July 13, 2016

<u>Via ECF</u>

Hon. P. Kevin Castel, U.S.D.J.
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *Claridge et al. v. North American Power & Gas, LLC,*
                  **Case No. 15-cv-1261**

Dear Judge Castel:

      We are co-counsel for plaintiffs in this putative class action. Pursuant to Local Civil Rule 37.2 and Your Honor's Individual Practice Rules 4(A)(1) & (3), we submit this letter motion to address discovery disputes that require the Court's intervention.

      The Complaint alleges that Defendant North American Power & Gas, LLC ("NAPG") misrepresented to Plaintiffs and other unnamed NAPG New York customers that NAPG variable rates for electricity would be market-based. While the parties have made substantial progress and have largely been able to resolve their discovery disputes through compromise, they have not been able to resolve their disputes concerning the production of certain customer account-level information, information regarding solicitations to New York consumers, and relevant emails. Attached as an appendix is the full text of the discovery requests and responses in dispute.

*Customer Account-Level Information And NAPG Solicitation Data*

      Using a common set of data reflecting the rates and charges each class member incurred as a NAPG customer, Plaintiffs will prove both that Defendant did not in fact charge a market rate, and the precise amount of damages for each customer. NAPG possesses this data in easily

{00278834 }    Newburgh • Albany • Binghamton • Kingston • Middletown • Newark • Port Jervis • Poughkeepsie • Spring Valley • Syracuse • White Plains
Phone: (914) 298-3281   Fax: (914) 824-1561   www.fbfglaw.com

1279 ROUTE 300, P.O. BOX 1111                                          445 HAMILTON AVE., SUITE 605
**x** NEWBURGH, NY 12551                                                WHITE PLAINS, NY 10601

accessible form, including in a database called Informed Power, as NAPG's President testified.[1] In fact, NAPG has produced data showing the actual rate NAPG charged each customer each month and the total monthly bill.  But Defendant has refused to produce other information that is directly germane to Plaintiffs' claims and Defendant's defenses.  Below is a summary of the data Defendant has refused to produce and the reason Plaintiffs require it for the prosecution of the class's claims:

| **Data Requested** | **Basis for Relevance** |
|---|---|
| Prospective customer lists used or purchased from vendors, including but not limited to NexGen or other vendors, documents sufficient to identify which specific mailing was sent to each customer on those lists, and the dates of each such mailing.  (RFP No. 4) <br><br> Documents sufficient to identify the mailing dates and destinations for all mailed solicitations NAPG sent to New York consumers concerning North American Power's electricity supply services.  (RFP No. 5) <br><br> Whether the customer signed up or enrolled through a website or by telephone; and whether the customer was initially contacted or solicited by a mailing, on a website, through North American Power's warm networks, by door to door contact, telemarketing, or by some other means (and if by some other means, identify that means).  (RFP No. 23)[2] | Defendant will (incorrectly) contend that one of the reasons a class should not be certified is that class members received different solicitations and that they enrolled in NAPG's services in different ways.  This data will identify which customers received which mailed solicitations and how they were enrolled, which will allow Plaintiffs and the Court to evaluate the strength of the defense and if necessary adjust the class definition accordingly. <br><br> NAPG President Mr. William Kinneary testified that NAP purchases customer lists from vendors, including NexGen.  *See* Kinneary Feb. 24, 2015 Dep. at 69:18-70:6. |

---

[1] Mr. Kinneary testified that NAPG's Informed Power is a "customer information accounting type system where [NAPG] keep[s] all customer records" (Kinneary April 7, 2016 Dep. at 11:2-6); that NAPG can efficiently "pull data for a hundred customers" without going "customer by customer" (Kinneary Feb. 24, 2015 Dep. at 39:6-10); and that NAPG relies on Informed Power in the regular course of business and that the data is "accurate and reliable."  Kinneary April 7, 2016 Dep. at 11:18-12:9.  Attached as Exhibits A and B are relevant excerpts from Mr. Kinneary's April 7, 2016 and February 24, 2015 Depositions.

[2] In an abundance of caution, Plaintiffs propounded on July 1, 2016, a corresponding interrogatory asking Defendant to identify the underlying information requested, to preclude Defendant from asserting that an interrogatory rather than a document request is the proper form.

| **Data Requested** | **Basis for Relevance** |
|---|---|
| Data in Informed Power concerning New York customer interactions.  (RFP No. 21) | NAPG records in Informed Power pertaining to customer complaints; consumers stating that they felt they were deceived is germane to the class's consumer protection claims. |
| Customers' names and addresses.  (RFP No. 23) | Discovery in this case is not bifurcated; in the event that a class is certified, Plaintiffs will need names and mailing addresses for purposes of providing notice to the class. |
| Information concerning the type of rate plan customers were on in any given month, including whether the customer is commercial or residential; the utility rate or service class, subclass or profile code; and the North American Power rate group or class for electricity.  (RFP No. 23) | Defendant will contend (incorrectly) that certification of a class of variable rate customers is inappropriate because some customers were on a promotional rate, a step up rate (used when customers switch from a fixed rate to a variable rate so they do not notice the jump in the rate that invariably occurs) or a discounted rate for the small percentage of NAPG variable rate customers who were personally recruited by individual representatives.  NAPG can identify all of this information in Informed Power, which will allow Plaintiffs and the Court to evaluate the strength of the defense and if necessary adjust the class definition accordingly. |
| Whether the customer redeemed a gift card or other promotional offer, and if so, the type and amount of the promotion."  (RFP No. 23) | Defendant may argue (incorrectly) that whether a customer received a gift card or other promotional offer affects class certification or that there should be an offset of some sort.  This data will identify which customers received gift cards or other offers (if any). |

Without substantiation, NAPG makes boilerplate and unspecific objections that the requests are overly broad, unduly burdensome, vague, ambiguous, and unlimited in time and/or scope.  *See* Appendix.  But as Mr. Kinneary testified, NAPG customer account-level information is readily available through Informed Power.  *See* Kinneary Feb. 24, 2015 Dep. at 39:6-10.  Nor

are any of the requests unlimited in time and scope, as NAPG only began selling electricity to New York customers in or around June 2011.  *See* Kinneary April 7, 2016 Dep. at 19:1-7.

NAPG's objection that the information sought may be confidential and proprietary is infirm, as Plaintiffs have proposed that the parties stipulate to a protective order as they have done in *Tully v. NAPG*, No. 14-634 (D. Conn.) and, accordingly, on April 12, 2016, forwarded a draft protective order to NAPG.  *See* D. Greg Blankinship's Letter to Peter G. Siachos, dated April 8, 2016, attached hereto as Exhibit C; Antonino Roman's Email to Peter G. Siachos dated April 12, 2016 (attaching "Proposed Protective Order"), attached hereto as Exhibit D.  But NAPG has yet to act on the proposed protective order.  Plaintiffs have even given NAPG the option of excluding customer names and limiting customer addresses to the city and zip codes if that assists with preserving the confidentiality of NAPG's records.  *See* D. Greg Blankinship's Letter to Peter G. Siachos, dated February 23, 2016, attached hereto as Exhibit E, at 4 (proposing that parties stipulate to a protective order).

NAPG's objection that the requests exceed the permissible scope of discovery and are premature prior to class certification is likewise infirm as there is no bifurcated discovery in this case.

Plaintiffs request that NAPG be ordered to produce the requested data on or before July 31, 2016.

*Email Production*

Plaintiffs also respectfully request that the Court set a firm date of July 31, 2016 for the production of all relevant emails, which is the last date sufficiently well in advance of the depositions of NAPG witnesses, the earliest of which has been noticed for August 10, 2016.  NAPG assures it will produce relevant emails, and the parties have agreed to a procedure for doing so.  But NAPG has failed to take any effective and substantial steps to do so.

On September 11, 2015, Plaintiffs propounded RFP Nos. 19 and 20 (among others), seeking emails concerning NAPG's electricity rates in New York.[3]  Defendant objected to the

---

[3] **RFP No. 19:**  All emails sent to or received from members of the Pricing Committee, North American Power's Chief Executive Officer, North American Power's President, North American Power's Vice President in charge of Marketing, North American Power's Chief Operations Officer, North American Power's Chief Financial Officer, North American Power's Vice President in charge of Information Technology, Vice President in charge of Operations, Darryl Brown, Kerry Breitbart, Greg Breitbart, Taff Tschamler, Chris Satler, Jim Crysdale, Kevin Schwartz, Mathew Redett, a certain "Tara" (former Chief Financial Officer of North American Power), Bill Cateno, Steve Havlicek, or Paul Rossi concerning North American Power's variable, introductory, or promotional rates for electricity in New York.

**RFP No. 20:**  All emails and other communications regarding North American Power's variable, introductory or promotional electricity rates in New York, including such emails or other

requests on October 14, 2015.  The parties then focused their efforts on mediation sessions held in December 2015 and February 2016 (which included the production and analysis of rate data for tens of thousands of customers).  When the parties failed to reach a settlement, they promptly met and conferred, at Plaintiffs' instance, to address outstanding discovery issues.  On April 7, 2016, Defendant assured it was not opposed to producing emails and agreed to propose search terms (Plaintiffs have previously propounded search terms which Defendant viewed as potentially overbroad).  *See* D. Greg Blankinship's Letter to Peter G. Siachos, dated April 8, 2016, at 2.  It was not until May 19, 2016 that Defendant submitted its proposed search terms.  *See* Peter G. Siachos's Email to D. Greg Blankinship *et al.*, dated May 19, 2016, attached as Exhibit F.  On June 1, 2016, Plaintiffs returned to Defendant the proposed search terms with revisions.  *See* D. Greg Blankinship's Email to Peter G. Siachos, dated June 1, 2016, attached as Exhibit G.  The parties conferred on June 6, 2016 to finalize the email search and production protocol.  As agreed, Defendant would produce a "hit report" based on agreed upon searches so that the parties could evaluate the extent to which the search terms capture an appropriate set of potentially responsive emails.  On June 17, 2016, Plaintiffs followed up on the hit report, and Defendant advised it expected to produce it the following week.  *See* Greil Roberts's Email to D. Greg Blankinship *et al.*, dated June 17, 2016, attached hereto as Exhibit H.  On June 27, 2016, Plaintiffs followed up on the hit report, warning that the parties only had a couple of months left before the close of discovery.  *See* D. Greg Blankinship's Email to Peter G. Siachos *et al.*, dated June 27, 2016, attached hereto as Exhibit I.  The next day, NAPG confessed it had been "too aggressive" in estimating the delivery date for the "hit reports" and could only promise to produce them "as soon as possible."  *See* Greil Roberts's Email to D. Greg Blankinship *et al.*, dated June 28, 2016, attached hereto as Exhibit J.  While appreciating NAPG's candor, Plaintiffs, on July 1, 2016, reiterated the urgency of producing emails sufficiently in advance of the impending depositions in the case and the close of discovery.  *See* D. Greg Blankinship's Letter to William E. Murray and Peter G. Siachos, dated July 1, 2016 (asking NAPG to confirm that it "will be able to produce all emails no later than the end of July" and "on a rolling basis" so that Plaintiffs "have time to review before the noticed depositions"), attached hereto as Exhibit K.  Defendant has yet to respond to Plaintiffs' July 1, 2016 email.

Plaintiffs are entitled to discover emails showing how Defendant set their variable rates for electricity in New York, as well as emails concerning its marketing practices.  Defendant does not challenge this proposition.  Plaintiffs are also entitled to the prompt production of such emails.[4]  Given the forthcoming depositions of NAPG witnesses in August and the September 2

---

communications regarding North American Power' decision to offer a one or two month introductory rate.

[4] *See Novick v. Axa Network, LLC*, No. 07-7767, 2014 WL 5364100, at *8 (S.D.N.Y. Oct. 22, 2014) (holding that "in light of the defendants' delayed production of e-mail messages, the plaintiff is entitled to re-take depositions, at the defendants' expense, to examine deponents he examined previously about the e-mail messages that should have been produced prior to the depositions ordered by the Court"); *Bellinger v. Astrue*, No. 06-321, 2007 WL 2907320, at *1 (E.D.N.Y. Oct. 3, 2007) (finding defendant liable for attorney's fees incurred by plaintiff in

discovery deadline, Plaintiffs respectfully request an Order requiring Defendant to produce all requested emails on or before July 31, 2016, and that it begin doing so immediately and on a rolling basis.

                                    Respectfully submitted,

                                    */s/ D. Greg Blankinship*
                                    D. Greg Blankinship

cc:  All Counsel (via ECF)

## CERTIFICATION

Pursuant to Fed. R. Civ. P. 37(a)(1), I hereby certify that I have in good faith conferred with Defendant's counsel in an effort to obtain the discovery above described without court action.

                                    */s/ D. Greg Blankinship*
                                    D. Greg Blankinship

---

moving to compel prompted by defendant's failure to properly and timely search for and produce all emails responsive to plaintiff's demands).

*APPENDIX*

**FULL TEXT OF DISCOVERY REQUESTS & RESPONSES IN DISPUTE**

**REQUEST FOR PRODUCTION NO. 4:** All prospective customer lists that North American Power used or purchased from vendors, including but not limited to NexGen or other vendors, and documents sufficient to identify which specific mailing was sent to each customer on those lists and the dates of each such mailing.

> **RESPONSE:** NAPG objects to this Request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence and is overly broad, unduly burdensome, vague, ambiguous, and unlimited in time and/or scope. NAPG further objects on the grounds that the Request seeks information and/or documents that is or may be confidential and/or proprietary, or otherwise constitutes a trade secret. NAPG further objects on the grounds that it is beyond the permissible scope of discovery and premature as it seeks discovery for a putative class that has not been certified. NAPG also objects to this Request on the grounds that it exceeds Plaintiffs' reasonable need for information in order to address the requirements for class certification, and seeks documents protected by the attorney-client privilege and/or the work product doctrine.

**REQUEST FOR PRODUCTION NO. 5:** Documents sufficient to identify the mailing dates and destinations for all mailers North American Power sent to New York consumers concerning North American Power's electricity supply services.

> **RESPONSE:** NAPG objects to this Request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence, and is overly broad, unduly burdensome, vague, and ambiguous. NAPG further objects on the grounds that the Request seeks information and/or documents that is or may be confidential and/or proprietary, or otherwise constitutes a trade secret. NAPG further objects on the grounds that it is beyond the permissible scope of discovery and premature as it seeks discovery for a putative class that has not been certified. NAPG also objects to this Request on the grounds that it exceeds Plaintiffs' reasonable need for information in order to address the requirements for class certification.

**REQUEST FOR PRODUCTION NO. 21:** All data in Informed Power concerning New York customer interactions.

> **RESPONSE:** NAPG objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and unlimited in time and/or scope. NAPG further objects on the basis that the term "Informed Power" is undefined. NAPG further objects to this Request on the grounds that it seeks information and/or documents that is or may be confidential and/or proprietary, or otherwise constitutes a trade secret. NAPG further objects to this Request on the grounds that it is beyond the permissible scope of

discovery and premature as it seeks discovery for a putative class that has not been certified; and exceeds Plaintiffs' reasonable need for information in order to address the requirements for class certification. NAPG further objects to this Request to the extend it seeks documents protected by the attorney-client privilege and/or the work product doctrine.

**REQUEST FOR PRODUCTION NO. 23:** For each North American Power electricity New York customer, produce data sufficient to identify the following: (a) Customer Name; (b) Account number; (c) Service address, including but not limited to city and ZIP code; (d) Billing address(es), if different from service address; (e) Whether the customer is identified as a commercial or residential customer; (f) Utility rate or service class, subclass or profile code; (g) North American Power rate group or class for electricity; (h) Meter reading dates for electricity; (i) The cents (or dollars) per kilowatt hour North American Power charged for each billing period; (j) The total kilowatt hours used during each billing period; (k) Date customer signed up to be a North American Power electricity customer; (l) Whether the customer signed up or enrolled through an website or by telephone; (m) Whether the customer was initially contacted or solicited by a mailing, on a website, through North American Power's warm networks, by door to door contact, telemarketing, or by some other means (and if by some other means, identify that means); (n) First billing period for electricity; (o) Date customer cancelled or terminated North American Power electricity service or supply (if any); (p) Last billing period for electricity (if any); and (q) Whether the customer redeemed a gift card or other promotional offer, and if so, the type and amount of the promotion.

> **RESPONSE:** NAPG objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and unlimited in time and/or scope. NAPG further objects to this Request on the grounds that it seeks information and/or documents that is or may be confidential and/or proprietary, or otherwise constitutes a trade secret. NAPG further objects to this Request on the grounds that it is beyond the permissible scope of discovery and premature as it seeks discovery for a putative class that has not been certified. NAPG also objects to this Request on the grounds that it exceeds Plaintiffs' reasonable need for information in order to address the requirements for class certification.

A copy of Defendant's Response to Plaintiffs' First Request for Production of Documents is attached as Exhibit L.