PETER G. SIACHOS
PSIACHOS@GORDONREES.COM



*Admitted In:  NJ, NY, DC, SC and PA*

ATTORNEYS AT LAW
18 COLUMBIA TURNPIKE, SUITE 220
FLORHAM PARK, NJ 07932
PHONE: (973) 549-2500
FAX: (973) 377-1911
WWW.GORDONREES.COM

November 22, 2016

**Via ECF**

Hon. P. Kevin Castel
United States District Judge
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

> Re:   *Julie Claridge and Helen Marsh v. North American Power & Gas, LLC*
>       Civil Action No.: 15-cv-1261

Dear Judge Castel:

Defendant North American Power & Gas, LLC ("NAPG") submits this letter in response to Plaintiffs' November 16, 2016 pre-motion letter seeking leave to file a motion to exclude the expert report and testimony of NAPG's expert, John Hanger (the "Letter") [Doc. 83]. Plaintiffs seek the wholesale exclusion of Mr. Hanger's report and testimony based on their belief that a portion of his report is irrelevant, and that Mr. Hanger, a veteran in energy policies and affairs, is unqualified to opine and testify as an expert witness in this matter.

The "rejection of expert testimony is the exception, rather than the rule,[1]" and *Daubert* presumes the admissibility of Hanger's report[2]. As such, NAPG opposes Plaintiffs' position and, by way of this letter, opposes their request for leave to file a formal motion on the topic.

I.   **Plaintiffs Do Not Meet the *Daubert* Standard to Exclude Mr. Hanger's Opinion**

Plaintiffs have not met the *Daubert* standard to exclude Mr. Hanger's analysis and opinion in the instant matter because they ignore *Daubert's* liberal standard for the admission of expert testimony. As the Second Circuit has recognized, *Daubert* "loosen[ed] the strictures on scientific evidence set by *Frye*" and, therefore, reinforced the idea that "there should be a presumption of admissibility of evidence."[3] Moreover, the Federal Rules of Evidence have a "liberal thrust" and liberal admissibility standards that recognize that our adversary system "provides the necessary tools for challenging reliable, albeit debatable, expert testimony."[4]

---

[1] *See* F.R.E. 702 advisory committee's notes (2000).
[2] *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995).
[3] *Id.*
[4] *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265, 267 (2d Cir. 2002). *See also Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005) ("It is a well-accepted principle that Rule 702

Hon. Kevin P. Castel, U.S.D.J.
November 22, 2016
Page 2

Under *Daubert*, the court serves a "gatekeeping" function by "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 579, 597. As gatekeeper, the court must determine whether the following three requirements for admissibility are met: (1) the witness must be "qualified as an expert"; (2) the expert's opinion must be "based upon reliable data and methodology"; and (3) the expert's testimony must assist the trier of fact.[5]

When reviewing expert testimony for admissibility, the Court should admit testimony even if it believes the expert's technique has flaws that may render the conclusions inaccurate. As the Second Circuit recognized, "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method [does] not render an expert's opinion per se inadmissible."[6]

NAPG respectfully submits that Mr. Hanger's analyses and opinions satisfy the Second Circuit's requirements for admissibility because (1) he is qualified to testify as an expert on the topics for which he has been designated as an expert by NAPG; (2) his opinions are based on reliable methodology; and (3) his opinions will assist the Court.

  A. <u>Mr. Hanger is Qualified to Serve as an Expert Witness in this Matter</u>

Mr. Hanger is a veteran of the private, public, and non-profit energy sectors in the northeastern United States.[7] His relevant professional experience spans both regulated and deregulated energy markets.[8] Mr. Hanger has served as: a staff and managing attorney for the Energy Project, where he represented low income plaintiffs concerning energy pricing[9]; a public advocate for Philadelphia energy consumers in a case concerning energy rates[10]; Commissioner of the Pennsylvania Public Utility Commission, wherein he decided thousands of cases involving energy rates and participated in the creation of a deregulated, competitive energy market[11]; Secretary of the Pennsylvania Department of Environmental Protection, where he oversaw several offices, including the DEP's energy office[12]; Special Counsel for a private law firm, where he focused on energy litigation[13]; Member of Pennsylvania Governor Tom Wolf's transition team, where he advised the Governor on, among other things, energy issues[14].

Mr. Hanger's decades of professional experience in the energy sector speaks for itself. Mr. Hanger is adequately qualified to opine as to the appropriateness of energy charges and veracity of promises made (or not) to consumers in the energy market. He has represented such consumers in both political and legal roles, and has been entrusted to oversee large energy

---

embodies a liberal standard of admissibility for expert opinions, representing a departure from the previously widely followed, and more restrictive, standard of *Frye*.").
[5] *Nimely*, 414 F.3d at 397.
[6] *Amorgianos,* 303 F.3d at 267.
[7] *See* Hanger Report at p. 1 (Exhibit A).
[8] *Id*.
[9] *See* Hanger Dep. at 14:11-13 (Exhibit B); Hanger Report at p. 22.
[10] *See* Hanger Dep. at 14-15.
[11] *Id*. at 16:19-20, 17:16.
[12] *Id*. at 19:7-8.
[13] *Id*. at 20:3-8.
[14] *Id*. at 24:9.

Hon. Kevin P. Castel, U.S.D.J.
November 22, 2016
Page 3

market-related departments by several prominent politicians and policymakers. In light of Mr. Hanger's broad experience, NAPG submits that any Motion to disqualify him as an expert witness in an energy-related matter would fail to launch. As such, Plaintiffs' letter requesting leave to file a formal motion to do so should be denied.

      B.      <u>Mr. Hanger's Opinions Are Reliable and His Methodology is Adequate</u>

In a *Daubert* challenge, the proponents "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that their opinions are reliable. . . The evidentiary requirement of reliability is lower than the merits standard of correctness."[15] Plaintiffs argue that Mr. Hanger's opinions are unreliable because he "relied exclusively on the deposition of Mr. Kinneary and unrecorded conversations he had with Mr. Kinneary" in reaching his expert conclusions.[16] This untenable position is belied by the fact that Mr. Hanger's expert opinion was formed after an review of the following:

- BP Invoices to NAPG (NAPG 1470-1500, 14953-14963);
- New Jersey Welcome Letters and Terms of Service (NAPG 671-679, 702-704, 713-715, 721-724, 731-740, 742-753, 755-781, 783-799, 804-805, 810-835, 840-842;
- New Jersey Electric and Gas Pricing Reports (NAPG 2280-2325, 2326-2355);
- New Jersey Pricing Reports (NAPG 904-1236, 1290-1375, 1134-1208, 1209-1236);
- New York Welcome Letters and Terms of Service (NAPG 1-126);
- New York Pricing Reports (NAPG 13773-14105, 14672-14986);
- Rhode Island Welcome Letters and Terms of Service (NAPG 14169-14188, 14191-14222);
- Rhode Island Pricing Reports (NAPG 14339-14567, 14568-14671);
- Expert reports issued by Dr. Frank Felder on behalf of Plaintiffs regarding New York, New Jersey, and Rhode Island[17];
- The sworn deposition testimony of William Kinneary, President and CEO of NAPG on February 24, 2015, March 17, 2016, April 7, 2016, and May 13, 2016[18];
- The Declaration of William Kinneary, dated May 13, 2016, submitted in opposition to Plaintiffs' Motion for Class Certification ("Kinneary Decl.")[19];
- Exhibit 1 to the Kinneary Decl., which is a reproduction of the data provided in Exhibit A of Dr. Felder's report (pages 46 – 61)[20];
- The sworn deposition testimony of Julie Claridge[21];

---

[15] *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994).
[16] *See* Dkt. 83, p. 4.
[17] *See* Hanger Dep. at 40:20.
[18] *See* Dkt. 83-1, p. 3; Hanger Dep. at 39:18, 40:20.
[19] *See* Dkt. 60-16.
[20] *Id*. at p. 3.
[21] *See* Hanger Dep. at 40:21.

Hon. Kevin P. Castel, U.S.D.J.
November 22, 2016
Page 4

- The sworn deposition testimony of Helen Marsh[22];
- The sworn deposition testimony of David Fritz[23];
- The sworn deposition testimony of Michael Tully[24];
- Exhibits entered into evidence during the depositions of Mr. Kinneary
- Exhibits entered into evidence during the deposition of Ms. Claridge, including[25]:

    <u>Exhibit A</u>: Welcome Letter dated November 21, 2013.

    <u>Exhibits B and D</u>: Fixed Rate Expiration Letters dated February 24, 2014.

    <u>Exhibits C and E</u>: Fixed Rate Confirmation Letters dated April 7, 2014.

    <u>Exhibit F</u>: Bill for Dec. 6, 2013 through January 1, 2014.

    <u>Exhibit G</u>: Marketing Materials

    <u>Exhibit H</u>: Ms. Claridge's Responses to Interrogatories.

- Exhibits entered into evidence during the deposition of Ms. Marsh, including[26]:

    <u>Exhibit A</u>: Welcome Letter dated November 21, 2013.

    <u>Exhibit B</u>: Fixed Rate Expiration Letter dated April 8, 2014.

    <u>Exhibit C</u>: Multiple power bills issued to Ms. Marsh.

    <u>Exhibit D</u>: Handwritten complaints by Ms. Marsh.

    <u>Exhibit E</u>: Ms. Marsh's Responses to Interrogatories.

    <u>Exhibit H</u>: Claridge's Responses to Interrogatories.

- Exhibits entered into evidence during the deposition of Mr. Fritz, including[27]:

    <u>Exhibit 1</u>: Letter to Mr. Fritz (NAPG 657-678).

    <u>Exhibit 2</u>: Important Notice (FRITZ 36).

    <u>Exhibit 3</u>: Bills (FRITZ 16-32).

    <u>Exhibit 4</u>: NAPG 671-674.

    <u>Exhibit 5</u>: PSE&G Bills (FRITZ 1-16).

    <u>Exhibit 6</u>: Graph (FRITZ 40 and 41)

    <u>Exhibit 7</u>: Amended Complaint.

- Exhibits entered into evidence during the deposition of Ms. Tully, including[28]:

    <u>Exhibit 1</u>: Notice of Mr. Tully's Deposition.

    <u>Exhibit 2</u>: First Amended Complaint.

---

[22] *Id.*
[23] *Id.* at 41:21.
[24] *Id.*
[25] *Id.* at 42:2.
[26] *Id.*
[27] *Id.*
[28] *Id.*

> Exhibit 3: Tully Production 1 through 23.
>
> Exhibit 4: National Grid Standing Offer.
>
> Exhibit 5: Electric Bills (30-87).
>
> Exhibit 6: Various relevant emails (24-29).

- The Complaint filed in the instant matter and all attachments filed therewith, including the New York Electricity Sales Agreement, Customer Disclosure Statement and Terms and Conditions governing NAPG's service of electricity to Plaintiffs Marsh and Claridge[29];

- The Complaint filed in the matter captioned as *Tully v. NAPG*, 1:15-cv-8 (D.R.I) and attachments filed therewith[30];

- The Complaint filed in the matter captioned as *Fritz v. NAPG*, 3:14-cv-634 (WWE) (D. Conn.) and attachments filed therewith[31];

- NAPG's Answer to the Complaints filed in the *Claridge*, *Tully*, and *Fritz* matters[32];

- Third-party internet sources, including https://www.ri.gov/app/dpuc/empowerri, http://nj.gov/njpowerswitch/shop[33], the Wall Street Journal, the New York Times, etc.; and

- Notes taken by Mr. Hanger during the course of preparing his expert report.[34]

Mr. Hanger also testified under oath that he had conversations with Mr. Kinneary to verify and discuss Mr. Kinneary's representations regarding the manner in which NAPG buys wholesale electricity and the extent to which NAPG is profitable.[35] Mr. Hanger also testified that he formed his opinions based upon his extensive background, knowledge and extensive experience with competitive wholesale and retail energy markets[36]. This testimony is corroborated by Mr. Hanger's expert opinion. Finally, Mr. Hanger testified that he reviewed the Kinneary Decl., to which an Exhibit including years of raw rate data was attached.[37] That is, Mr. Hanger explicitly testified that he reviewed and analyzed raw rate data in formulating this opinion about NAPG's business practices – a major detail Plaintiffs likely hoped the Court would overlook.

When reviewing expert testimony for admissibility, the Court should admit testimony even if it believes the expert's technique has flaws that may render the conclusions inaccurate. As the Second Circuit recognized, "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method [does] not render an expert's opinion per se inadmissible."[38] Unlike the experts in inapposite cases cited to by Plaintiffs, Mr. Hanger relied

---

[29] *Id*. at 39:17.
[30] *Id*. at 40:15.
[31] *Id*. at 40:12.
[32] *Id*. at 40:18.
[33] *See* Hanger Report at p. 11.
[34] *See* Hanger Dep. at 9:17-19.
[35] *Id*. at 52:17-24, 56:17.
[36] *See, e.g.* Hanger Dep. at 42:3-12; Hanger Report at p. 4.
[37] *Id*. at 40:3.
[38] *Amorgianos*, 303 F.3d at 267.

upon far more than just the sworn statements of Mr. Kinneary when forming his independent expert opinion. Unlike the expert in the *CIT Grp./Bus. Bredit, Inc.* case upon which Plaintiffs rely, Mr. Hanger performed an independent evaluation of myriad sources of independent information including, most notably, the expert opinions of Plaintiffs' expert, Dr. Felder.

As such, and based on the foregoing, NAPG respectfully submits that, contrary to Plaintiffs' claims in the Letter, Mr. Hanger has formed his expert opinion based upon an independent review of sworn deposition testimony, pleadings filed in this and other jurisdictions, sworn-to discovery responses, raw data, and his own substantial experience in the deregulated energy sector. NAPG further submits that his methodology is accepted in his field, and is the appropriate basis upon which to form a reasonable expert opinion.

### C. Mr. Hanger's Opinions Will Assist the Trier of Fact

To be admissible under *Daubert*, a reliable expert opinion must be helpful to aid in understanding the evidence or determining a fact in issue.[39] The the requirement that the expert's opinion must be helpful goes primarily to relevance, in that it requires a "valid scientific connection to the pertinent inquiry as a precondition to admissibility."[40] To satisfy the requirement, an expert's opinion does not need to establish, in and of itself, any of the ultimate issues; it only needs to constitute one piece of the puzzle in proving the case.[41]

NAPG submits that Mr. Hanger's expert opinion constitutes a piece of the puzzle in defending against Plaintiffs' claims. Plaintiffs devote a disproportionately large portion of their letter request to the relevancy of the substance of Mr. Hanger's report. Specifically, Plaintiffs argue that, because a portion of Mr. Hanger's report focuses on public policy concerning ESCO's and deregulation of the sale of electricity in New York, the report as a whole should be stricken.[42] Setting aside the hypocrisy of such an argument – Plaintiffs' own expert, Dr. Felder, devotes 5 pages of his 19-page report to substantially the same topic – NAPG submits that this argument should not persuade the Court to allow Plaintiffs to make a motion to exclude Mr. Hanger's expert testimony and report.

In fact, Mr. Hanger's expert report includes several pages worth of analysis concerning NAPG's marketing strategies and the strong consumer protections included therein[43] and the unique, competitive products offered by NAPG to New York consumers like Ms. Claridge, Ms. Marsh, and the class they represent[44]. As set forth in the Hanger Report, and as testified under oath by Mr. Hanger, these opinions are based upon Mr. Hanger's unique understanding of complex rate calculations charged by NAPG through the lens of his vast experience and expertise in the energy regulation sector. As such, NAPG respectfully submits that the Court

---

[39] *See* Rule 702; *Daubert*, 509 U.S. at 591; *Nimely*, 414 F.3d at 397.
[40] *See Daubert*, 509 U.S. at 591-92; *Amorgianos*, 303 F.3d at 265 (stating that an expert witness's testimony must be relevant, *i.e.*, it must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").
[41] *Fleischman v. Albany Med. Ctr.*, 728 F. Supp. 2d 130, 151-52 (N.D.N.Y. 2010); *Allen v. City of New York*, 466 F. Supp. 2d 545, 550 n.3 (S.D.N.Y. 2006).
[42] *See* Dkt. 83 at p. 2.
[43] *See* Dkt. 83-1 at p. 14.
[44] *Id*. at p. 16.

Hon. Kevin P. Castel, U.S.D.J.
November 22, 2016
Page 7

should not allow Plaintiffs to move forward with their expressed desire to attempt to exclude Mr. Hanger's expert opinions in this matter.

**II.** **Conclusion**

Based on the foregoing, NAPG opposes Plaintiffs' letter application for leave to file a Motion to Exclude the Expert Testimony of John Hanger and on that basis respectfully requests that the Court deny Plaintiffs' letter request.

Respectfully submitted,

GORDON & REES LLP

*/s/Peter G. Siachos*

PETER G. SIACHOS


Enclosures

cc: (*Via ECF*)
All counsel of record