UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JULIE CLARIDGE and HELEN MARSH,

                  Plaintiffs,                           15-cv-1261 (PKC)

     -against-                                 MEMORANDUM
                                                  AND ORDER

NORTH AMERICAN POWER & GAS, LLC,

                  Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Julie Claridge and Helen Marsh move, pursuant to Rule 23, Fed. R. Civ.

P., to certify a class of New York consumers who paid a variable monthly rate for electricity that

they purchased from defendant North American Power & Gas, LLC ("North American").

(Docket # 50.)  Plaintiffs assert that the proposed class was commonly bound by a sales

agreement that North American distributed to all customers, and that this agreement

misleadingly described the "variable market based rate" used to calculate monthly electricity

bills.  Plaintiffs bring claims for breach of contract, breach of the implied covenant of good faith

and fair dealing and deceptive trade practices in violation of New York General Business Law

sections 349 and 349-d.

        For the reasons explained, the plaintiffs' motion for class certification is granted.

BACKGROUND.

        North American is an energy services company ("ESCO") that supplies electricity

to its customers, with the actual delivery of that electricity managed by local utilities.  (Felder

Report at 3.)  North American first began selling electricity to New York consumers in or around

June 2011.  (Kinneary 4/7/16 Dep. at 19.)

When customers began their subscriptions to North American, they generally paid either a promotional rate for two months, or a fixed monthly rate for a set term. (Kinneary 4/7/16 Dep. at 23; Pl. Mem. at 4.)  Once the promotional rate or fixed rate expired, customers paid North American for monthly electricity calculated under North American's "variable market based rate." (Id.)

All new customers received a "Welcome Packet" consisting of a "Welcome Letter" and "Sales Agreement," which included a "Customer Disclosure Statement and Terms and Conditions." (Blankenship Dec. Ex. 4.)  The Disclosure Statement described North American's variable monthly rate. (Blankenship Dec. Ex. 4.)  Under the heading "Open Price," it stated that customers would be charged a "variable market based rate" that "will be calculated on the method stated above to include any market prices for commodity, transportation, balancing fees, storage charges, NORTH AMERICAN POWER fees, profit, line losses plus applicable taxes, and any other charges or fees imposed by the utility or other entity having such authority to impose any such charges." (Blankenship Dec. Ex. 4.)  There is no dispute that North American distributed a uniform version of the Sales Agreement to all new customers.

As this Court discussed in its decision denying North American's motion to dismiss, the Complaint plausibly alleged that the Sales Agreement's description of the "variable market based rate" was "incomplete and confusing," including a reference to a "method stated above" when no such method was described.  See Claridge v. N. Am. Power & Gas, LLC, 2015 WL 5155934, at *4 (S.D.N.Y. Sept. 2, 2015).  This Court concluded that, according to the Complaint's allegations, "[a] reasonable consumer acting reasonably would not know whether 'variable market based rates' refers to rates charged by competing ESCOs or the market prices that North American paid to others.  A reasonable consumer acting reasonably could be deceived

into believing that the rates he or she would be charged under the Agreement would approximate

the market price, i.e., what other ESCOs charged their customers." Id. at *5.  Plaintiffs assert

that North American's variable monthly rates charged them prices that were "substantially

higher" than those of competing ESCOs and local utilities.  Id. at *2.

>   According to plaintiffs, during the time that North American has sold electricity

in New York, it has determined its rates by forecasting customer demand for the coming month

and then using a hedging strategy to purchase electricity in advance.  (Kinneary Dep. at 67-68.)

North American would then purchase additional electricity, as needed, on the short-term or

"spot" market, to make up for any differences between its advance purchase and the actual

demand of its New York customers.  (See Pl. Mem. at 4.)

CLASS CERTIFICATION STANDARD.

>   Rule 23 governs the certification of a class action.  The party seeking class

certification must satisfy Rule 23(a) and "at least one of the three requirements listed in Rule

23(b)."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011).  Rule 23(a) states:

> One or more members of a class may sue or be sued as representative
> parties on behalf of all members only if: (1) the class is so numerous
> that joinder of all members is impracticable; (2) there are questions
> of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the
> class; and (4) the representative parties will fairly and adequately
> protect the interests of the class.

"The Rule's four requirements – numerosity, commonality, typicality, and adequate

representation – effectively limit the class claims to those fairly encompassed by the named

plaintiff's claims."  Dukes, 564 U.S. at 349 (quotation marks omitted).  "A party seeking class

certification must affirmatively demonstrate his compliance with the Rule – that is, he must be

prepared to prove that there are <u>in</u> <u>fact</u> sufficiently numerous parties, common questions of law

or fact, etc." <u>Id.</u> at 350 (emphasis in original).

   Plaintiffs seek to certify a class under Rule 23(b)(3), which requires that

"questions of law or fact common to class members predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy." A court must "bear[] firmly in mind that the focus

of Rule 23(b)(3) is on the predominance of common <u>questions</u> . . . ." <u>Amgen Inc. v. Connecticut</u>

<u>Ret. Plans & Trust Funds</u>, 133 S. Ct. 1184, 1194 (2013). It "does <u>not</u> require a plaintiff seeking

class certification to prove that each element of her claim is susceptible to classwide proof," but

instead to prove that "common questions <u>predominate</u> over any questions affecting only

individual class members." <u>Id.</u> at 1196 (emphasis in original; alterations and quotation marks

omitted); <u>accord</u> <u>Sykes v. Mel S. Harris & Associates LLC</u>, 780 F.3d 70, 87 (2d Cir. 2015) ("The

mere existence of individual issues will not be sufficient to defeat certification. Rather, the

balance must tip such that these individual issues predominate.").

   "[A] plaintiff must satisfy all of the requirements of Rule 23, by a preponderance

of the evidence, to obtain class certification . . . ." <u>Novella v. Westchester Cnty.</u>, 661 F.3d 128,

148-49 (2d Cir. 2011). The "class-certification analysis must be 'rigorous' and may 'entail some

overlap with the merits of the plaintiff's underlying claim' . . . ." <u>Amgen, Inc.</u>, 133 S. Ct. at

1194. At the same time, "[m]erits questions may be considered to the extent – but only to the

extent – that they are relevant to determining whether the Rule 23 prerequisites for class

certification are satisfied." <u>Id.</u> at 1195. A claim's merits may be relevant if, for instance, the

failure of proof as to one element would require individualized determinations for each class

member, and would not affect all class members. <u>See</u> <u>id.</u> at 1195-96.

DISCUSSION.

    A.  Rule 23(a).

        1.  Numerosity.

Rule 23(a)(1) requires plaintiffs to show that "the class is so numerous that joinder of all members is impracticable."  Plaintiffs' expert, Frank Felder, Ph.D., estimates that there are more than 40,000 members of the proposed class.  (Felder Report at 12.)  In opposition, North American does not dispute that plaintiffs have shown numerosity.

The Court concludes that the plaintiffs have satisfied the numerosity requirement.

        2.  Commonality.

Rule 23(a)(2) requires plaintiffs to show that "there are questions of law or fact common to the class."  It "requires the plaintiff to demonstrate that the class members have suffered the same injury," which must turn "upon a common contention."  Dukes, 564 U.S. at 350.  "That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  "Consideration of this requirement obligates a district court to determine whether plaintiffs have 'suffered the same injury.'"  Sykes, 780 F.3d at 84.

"[C]laims based on uniform misrepresentations to all members of a class are appropriate subjects for class certification" because "uniform misrepresentations" can be adjudicated with "no need for a series of mini-trials."  In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013) (quotation marks omitted).  In U.S. Foodservice, the Second Circuit affirmed certification of a RICO class whose members paid invoices containing allegedly unlawful markups.  Id.  It explained that "[w]hile each invoice obviously concerned different

bills of goods with different mark-ups, the material misrepresentation – concealment of the fact

of a mark-up inserted by the [billing entity] – was the same in each."  Id.; see also Smilow v. Sw.

Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003) ("The common factual basis is found in

the terms of the contract, which are identical for all class members.").

Plaintiffs contend that North American misleadingly described to its New York

customers the "variable market based rate" set forth in the Terms and Conditions portion of its

Sales Agreement.  The claims of the proposed class turn on common contentions of whether

North American's description of its rate-setting practices was accurate and truthful, including

whether North American misleadingly described its method for setting the variable market-based

rate and whether its method was consistent with the factors specified in the Sales Agreement.

Plaintiffs also point to common questions on damages, including whether damages should be

calculated according to the difference between North American's rates and those of other market

participants, or whether damages should instead reflect the difference between North American's

actual charged rate and a hypothetical rate calculated pursuant to the factors described in the

Sales Agreement.  There is also the common question of whether, if the plaintiffs succeed on

their claims, class members should be awarded $500 in statutory damages under New York

General Business Law section 349-d.

North American argues that plaintiffs' claims require individualized adjudication

because customers had different, subjective understandings of terms like "market rate," "daily

market price" and "market value."  (Opp. Mem. at 12.)  It points out that Claridge testified in her

deposition that she did not understand the distinction between the terms "market rate" and

"wholesale rate," and that Marsh testified that variable prices should have been determined by

"the commodity rate, the competitive rate of other electric energy sources . . . ."  (Id., citing

Claridge Dep at 41, Marsh Dep. at 12.)  But plaintiffs assert that North American's disclosures about the "variable market based rate" were themselves misleading and imprecise.  Commonality is not defeated because consumers interpreted arguably vague and misleading language in different ways.

The claims of the proposed class turn on the "common contention" that North American misleadingly described its method for calculating variable monthly rates, a claim that "is capable of classwide resolution . . . ."  Dukes, 564 U.S. at 350.  Plaintiffs have therefore shown common questions of law and fact under Rule 23(a)(2).

   3. Typicality.

Rule 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "To establish typicality under Rule 23(a)(3), the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (quoting Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)).  "Typicality requires that 'the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'"  Mazzei v. Money Store, 829 F.3d 260, 272 (2d Cir. 2016) (quoting Caridad v. Metro-N. Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999)).  "One purpose of the typicality requirement is 'to ensure that . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  Id. at 272 (quoting Marisol A. ex rel. Forbes v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997)).

Plaintiffs assert that their claims are typical because, like all proposed class members, they assert that North American misrepresented the "variable market based rates" used to calculate monthly electricity bills.  North American contends that Marsh and Claridge cannot show typicality because, prior to paying the monthly variable rate, they were offered introductory fixed rates for different periods of time, and that the initial fixed rates varied widely. (Opp. Mem. at 15.)  It also asserts that customers received differing sales pitches from North American, which informed their decisions to become North American customers.  (Id. at 16-17.) But the plaintiffs' proposed class consists of "customers who paid [North American's] variable rate," (Docket # 50) and not its fixed rate.  Further, their claims are directed toward North American's statements made in a widely dispersed document and a uniform contract; oral representations by North American to solicit new customers do not lie at the heart of their claims.  Because plaintiffs' claims turn on North American's written disclosure concerning the "variable market based rates," its arguments concerning other marketing practices do not defeat typicality.  See, e.g., In re Polaroid ERISA Litig., 240 F.R.D. 65, 76 (S.D.N.Y. 2006) ("Defendants' argument that Plaintiffs' claims for misrepresentation and nondisclosure inherently require an individualized analysis is also insufficient to defeat typicality.  The Complaint contains allegations of plan-wide misrepresentations and nondisclosures which, by definition, were not individualized.").

North American also argues that plaintiffs cannot show typicality because its "fixed and variable rates are calculated based upon a complex algorithm of variables unique to each customer," including a customer's "zone and/or subzone," weather, renewable energy credits, customer complaints and "[l]ocal, national and global news."  (Opp. Mem. at 15-16.)  As support, North American cites different fixed rates (as opposed to variable rates) that it charged

to Marsh and Claridge.  (Id. at 16.)  Assuming that these assorted factors informed North

American's calculation of variable market based rates, they do not defeat typicality, but instead

reflect that Marsh and Claridge, like other customers, were charged at rates based on numerous

factors, including some that seemingly were not disclosed in the Sales Agreement.

Because Marsh and Claridge have made a showing that their claims are typical of

the proposed class members, the Court concludes that they satisfy the typicality requirement of

Rule 23(a)(3).

### 4.   Adequacy.

Rule 23(a)(4) requires a showing that "the representative parties will fairly and

adequately protect the interests of the class."  "[A]dequacy is satisfied unless 'plaintiff's interests

are antagonistic to the interest of other members of the class.'"  Sykes, 780 F.3d at 90 (quoting

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)); see also In re

Flag Telecom, 574 F.3d at 35 (determining adequacy "entails inquiry as to whether: 1) plaintiff's

interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys

are qualified, experienced and able to conduct the litigation.") (quotation marks omitted).[1]

North American does not assert that Marsh or Claridge have interests antagonistic

to the class.  It again points to the named plaintiffs' failure in their depositions to provide a

consistent definition of the phrase "wholesale market prices," and argues that "a plaintiff who

does not understand the definition or scope of a term that is at the heart of a litigation cannot

adequately represent the interests of a class the plaintiff seeks to certify."  (Opp. Mem. at 18.)

But again, the failure of the two named plaintiffs to articulate in their depositions a consistent

---

[1] The Court addresses the qualification of plaintiffs' counsel under Rule 23(g) below.

interpretation of allegedly misleading terms does not render plaintiffs inadequate class representatives.

The Court concludes that plaintiffs satisfy the adequacy requirement of Rule 23(a)(4).

B. Rule 23(b)(3).

Rule 23(b)(3) requires plaintiffs to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  It requires "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  Amgen Inc., 133 S. Ct. at 1191 (emphasis in original).  "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015) (quoting In re U.S. Foodservice Inc., 729 F.3d at 118).

1. Plaintiffs' Claims under the New York General Business Law.

Plaintiffs' claims under the New York General Business Law can be adjudicated through common proof, and the use of generalized proof is more substantial than the issues potentially subject to individual proof.  New York General Business Law section 349(a) makes it unlawful to use "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ."  New York General Business Law section 349-d(3) specifically governs the deceptive practices of ESCOs, and states that "[n]o person who sells or offers for sale any energy services for, or on behalf of, an ESCO shall engage in any deceptive acts or practices in the

marketing of energy services."  The parties agree that sections 349(a) and -d(3) have identical

elements.  See Claridge, 2015 WL 5155934, at *4.  The scope of section 349 is "intentionally

broad" and requires a plaintiff to prove "a deceptive act or practice directed toward consumers

and that such act or practice resulted in actual injury to a plaintiff."  Blue Cross & Blue Shield of

N.J., Inc. v. Philip Morris USA Inc., 3 N.Y.3d 200, 205-06 (2004).  "Justifiable reliance by the

plaintiff is not an element of the statutory claim."  Koch v. Acker, Merrall & Condit Co., 18

N.Y.3d 940, 941 (2012).

Here, liability can be determined on a class-wide basis because the plaintiffs'

claims are directed toward uniform terms that were contained in a common Sales Agreement

distributed to all new customers.  Individualized evidence is not required.  Rather, plaintiffs must

prove whether North American employed "a deceptive act or practice" by misleading consumers

about its method for calculating a "variable market based rate."  In large measure, plaintiffs'

claims will succeed or fail based on a determination of whether the Sales Agreement was

deceptive in its description of the "variable market based rate" – an issue that can be adjudicated

through the use of common proof, and not individualized proof.  A class-wide determination is

superior to an individualized determination because the latter would simply entail repeated

adjudications of identical provisions of the Sales Agreement.  Cf. In re U.S. Foodservice, 729

F.3d at 118 ("[F]raud claims based on uniform misrepresentations to all members of a class 'are

appropriate subjects for class certification' because, unlike fraud claims in which there are

material variations in the misrepresentations made to each class member, uniform

misrepresentations create 'no need for a series of mini-trials.'") (quoting Moore v. PaineWebber,

Inc., 306 F.3d 1247, 1253 (2d Cir. 2002)).

The Court therefore concludes that, under Rule 23(b)(3), common questions of law and fact predominate over plaintiffs' General Business Law claims, and that a classwide resolution is superior to individual actions to adjudicate the merits.

2.   Plaintiffs' Contract Claims.

Plaintiffs also seek certification for their claims asserting breach of contract and breach of the covenant of good faith and fair dealing.  "[T]he essential elements of a cause of action for breach of contract are the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages."  U.S. Bank Nat'l Ass'n v. Lieberman, 98 A.D.3d 422, 423 (1st Dep't 2012).  In New York, all contracts contain an implied covenant of good faith and fair dealing, under which "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002).  "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion."  Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995).

Contract claims satisfy Rule 23(b)(3) when the claims of the proposed class "focus predominantly on common evidence . . . ."  In re U.S. Foodservice Inc., 729 F.3d at 125. The Second Circuit has affirmed certification of a contract claim when minor variations existed in the language of the disputed contracts because the underlying claim was directed to a "substantially similar" terms.  Id. at 124.  Plaintiffs claimed that defendants were in breach because they concealed the true nature of their fuel-pricing practices, and that they therefore did not know and understand the defendants' true course of performance.  Id. at 125.  Questions of whether a defendant acted in good faith under the contract also were deemed "common to all

class members." Id. at 125.  "To be clear, courts properly refuse to certify breach of contract

class actions where the claims require examination of individual contract language." Id. at 124.

Individual issues may predominate when, for instance, contract claims turn on material

differences in state law.  See Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 147-48 (2d Cir.

2015) (because contract claims were intertwined with different state-law malpractice standards,

common questions did not predominate).

                Plaintiffs' claims for breach of contract and breach of the covenant of good faith

and fair dealing are largely directed to language in the Sales Agreement that was distributed to

all members of the proposed class.  The claims predominantly focus on common evidence.  In

opposition to plaintiffs' motion, North American again cites to subjective interpretations of the

phrase "wholesale market rate," and argues that each customer may have had a unique and

individual interpretation of the underlying billing practices.  However, there is no dispute that

North American distributed a uniform Sales Agreement that governed customers' subscriptions

and described the calculation of variable market based rates.  To the extent that North American

argues that customers' subjective understanding may have been informed by loosely scripted

conversations with telemarketers or by other marketing materials (Opp. Mem. at 20), the Sales

Agreement contains an integration clause that states, "This agreement and the Enrollment Form

or Welcome Letter reflect Customer's entire agreement with [North American] and supersede

any oral or written statements made in connection with this agreement or Customer electricity

supply." (Blankinship Dec. Ex. 4 at 7.)  External marketing about North American's billing rates

would not go toward plaintiffs' breach claim, and North American has not pointed to any

ambiguity that would make parol evidence relevant to resolving plaintiffs' claims.

Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing are directed to the text of a uniform Sales Agreement that was distributed to all members of the proposed class. Common issues susceptible to generalized proof substantially predominate over individualized issues, if any. The Court therefore concludes that plaintiffs have satisfied Rule 23(b)(3) as to these claims.

C. Rule 23(g).

Rule 23(g)(1) states that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." The Court must consider the work of counsel in identifying or investigating potential claims; counsel's experience in litigating class actions; counsel's knowledge of applicable law; and the resources available to counsel. Rule 23(g)(1)(A). Class counsel "must fairly and adequately represent the interests of the class." Rule 23(g)(4). "The purpose of this requirement is to protect the interests of absent class members, who will be bound by the results of the action under res judicata." Kulig v. Midland Funding, LLC, 2014 WL 5017817, at *2 (S.D.N.Y. Sept. 26, 2014). "'[I]n determining the adequacy of counsel, the court looks beyond reputation built upon past practice and examines counsel's competence displayed by present performance.'" Id. (quoting Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 156 (S.D.N.Y. 2002)). Although North American opposes the motion for class certification, it "does not dispute the competence of class counsel . . . ." (Opp. Mem. at 17.)

Plaintiffs are represented by three law firms: Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("Finkelstein"); Mazie Slater Katz & Freeman, LLC ("Mazie"); and McCuneWright LLP ("McCune"). Attorneys from Finkelstein and Mazie have been counsel of record to plaintiffs since the commencement of this action. Matthew D. Schelkopf, an attorney

at McCune, also has been counsel of record to plaintiffs since the action was commenced, but was employed by different law firm at commencement.  The three firms jointly move to be appointed co-class counsel.

Based on their performance in this action, the Court concludes that the plaintiffs' attorneys have fairly and adequately represented the interests of the class, and there is no indication that they will not continue to do so.  Counsel successfully opposed the defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(6), and have advocated for plaintiffs' interests throughout a discovery process that has been contentious at times.  Their submissions to the Court have reflected knowledge of the law governing plaintiffs' claims and familiarity with class action procedures.  Their present performance has demonstrated competence to protect the interests of the class and to pursue the class's claims.  See generally Kulig, 2014 WL 5017817, at *2.

Based on the declarations submitted by counsel and their supporting exhibits, the Court also concludes that plaintiffs' counsel have adequate resources to litigate this action and are experienced in litigating class actions.  Finkelstein has been appointed class counsel in several consumer class actions, including cases in this District that were brought against electricity providers and other utilities.  (Blankinship Dec. Ex. 7.)  Greg Blankinship, a partner at Finkelstein, has practiced law since 2003 and has been appointed class counsel in at least five class actions, including actions against utilities that asserted deceptive pricing practices.  (Blankinship Dec. Ex. 7.)  Mazie has been appointed class counsel in at least eight class actions, principally in cases that involve products liability.  (Mendelsohn Dec. ¶ 5)  Matthew R. Mendelsohn, a partner at Mazie, has practiced law since 2005, and has been class counsel in consumer class actions, primarily involving products-liability claims.  (Mendelsohn Dec. Ex. A.)

In 2013, he was appointed class counsel in a products-liability action brought in this District.

(Mendelsohn Dec. ¶ 6.)  McCune has been appointed class counsel in class actions involving

products liability and consumer fraud claims.  (Schlkopf Dec. ¶¶ 8-14 & Ex. A.)  Matthew D.

Schelkopf, a partner at McCune, has practiced law since 2002, and has been class counsel in at

least seven class actions, all of them involving products-liability claims.  (Schelkopf Dec. ¶¶ 8-

14.)

Based on their performance in this case, the experience of the law firms and of the

attorneys of record, and of the resources available to those attorneys, the Court appoints the

Finkelstein, Mazie and McCune firms as co-class counsel in this case.

D.  Class Period.

Plaintiffs' notice of motion seeks to certify a class "of all New York North

American Power & Gas, LLC customers who paid North American Power & Gas, LLC's

variable rate . . . ."  (Docket # 50.)  This proposed class is overbroad and does not account for the

relevant limitations periods.

This action was filed on February 20, 2015.  New York General Business Law

sections 349(a) and 349-d(3) has a three-year limitations period.  CPLR 214(2); Gaidon v.

Guardian Life Ins. Co. of Am., 96 N.Y.2d 201, 209-10 (2001).  For claims under the General

Business Law, the plaintiff class is limited to consumers who paid North American's variable

rate on or after February 20, 2012.

Plaintiffs' claims for breach of contract and breach of the implied covenant of

good faith and fair dealing are governed by the six-year limitations period of CPLR 213(2).

North American first began selling electricity to New York consumers in or around June 2011.

(See Kinneary 4/7/16 Dep. at 19.)  For the claims alleging breach of contract and breach of the

covenant of good faith and fair dealing, the class includes consumers who paid North

American's variable market based rates in or after June 2011.

CONCLUSION.

Plaintiffs' motion for class certification is GRANTED.  (Docket # 50.)  The Clerk

is directed to terminate the motion.

The law firms of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, Mazie

Slater Katz & Freeman, LLC and McCuneWright LLP are jointly appointed to act as class

counsel.

Within 21 days, class counsel shall submit a proposed form of notice to class

members and a proposed plan for distributing notice.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       November 30, 2016